481 So.2d 29 (1985)
CHATTEL SHIPPING AND INVESTMENT, INC., Appellant,
v.
BRICKELL PLACE CONDOMINIUM ASSOCIATION, INC., Appellee.
No. 85-1029.
District Court of Appeal of Florida, Third District.
December 10, 1985.
Rehearing Denied January 24, 1986.
*30 Mershon, Sawyer, Johnston, Dunwody & Cole and James M. McCann, Jr. and Richard C. Klugh, Jr., Miami, for appellant.
Hyman & Kaplan and Michael Hyman and Joseph H. Ganguzza, Miami, for appellee.
Before SCHWARTZ, C.J., and DANIEL S. PEARSON and FERGUSON, JJ.
SCHWARTZ, Chief Judge.
Although the Brickell Place Declaration of Condominium precluded the practice without prior approval, as many as forty-five unit owners had, by June 17, 1981, unauthorizedly enclosed their balconies. On that date, in response to an earlier letter from a Miami official that the enclosures violated the city's zoning ordinance, the board of the condominium association determined  and so informed the owners  that it would thereafter take "no action with respect to existing, but prohibit future balcony constructions and enforce the prohibition."
In the court below, the association secured a mandatory injunction requiring the removal of a balcony enclosure erected without permission in 1983. The unit owner, Chattel Shipping and Investment, Inc., seeks reversal on the sole ground that, because the association has failed to require dismantling of the enclosures in place in June, 1981, the present action to remove a subsequently-erected one represents an "unequal and arbitrary enforcement of the restriction" which may not be maintained under White Egret Condominium, Inc. v. Franklin, 379 So.2d 346, 352 (Fla. 1979). We reject this position upon the holding that the adoption and implementation of a uniform policy[1] under which, for obvious reasons of practicality and economy, a given building restriction will be enforced only prospectively cannot be deemed "selective and arbitrary" within the meaning of White Egret. See Constellation Condominium Association v. Harrington, 467 So.2d 378 (Fla. 2d DCA 1985), and cases cited. Compare Ladner v. Plaza Del Prado Condominium Association, 423 So.2d 927 (Fla. 3d DCA 1982) (association not precluded from enforcing restriction against unit owners not given permission by developer to violate regulation), pet. for review denied, 434 So.2d 887 (Fla. 1983); with Plaza Del Prado Condominium Association v. Richman, 345 So.2d 851 (Fla. 3d DCA 1977) (prior holding that same association precluded from enforcement of same restriction against unit owners permitted to violate restriction by developer); see generally, Juno By The Sea North Condominium Association v. Manfredonia, 397 So.2d 297 (Fla. 4th DCA 1980) (upholding condominium parking restriction which "makes sense" as therefore not unenforceably arbitrary), pet. for review denied, 402 So.2d 611 (Fla. 1981); Wayte v. United States, ___ U.S. ___, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985) (rejecting claim of selective enforcement of criminal law).
It is important also that, when selective enforcement has in fact been demonstrated, the association is said to be "estopped" from applying a given regulation. White Egret, 379 So.2d at 352. Obviously, this is because, as in White Egret itself in which several children were living in the condominium contrary to the restriction when Franklin purchased his unit, previous non-enforcement has led to expenditures made in justified reliance on the continuation of that policy. See 22 Fla.Jur.2d Estoppel and Waiver, §§ 41-42 (1980); see also Fifty-Six Sixty Collins Avenue Condominium, Inc. v. Dawson, 354 So.2d 432 (Fla. 3d DCA 1978); and Richman, supra, cited in White Egret, 379 So.2d at 352. This principle plainly has no application to *31 the present appellant,[2] which erected its forbidden structure after being placed on specific notice that any subsequent violation would not be permitted. 22 Fla.Jur.2d, supra §§ 54-57; Constellation, supra.
Affirmed.
NOTES
[1] In accordance with its announcement, the association has in fact taken action against each of the several enclosures which were erected after June 17, 1981.
[2] The fact that, in contrast and as in Richman, supra, unit owners who enclosed their balconies before the announcement of the contrary policy in 1981 might be able to invoke the estoppel principle provides another reasonable, non-arbitrary basis for the association's decision not to proceed against them.