**ASSOCIATION OF OWNERS OF RE-GENCY PARK CONDOMINIUMS, Plaintiff/Appellee,**

**v.**

**Margaret (Mrs. I.C.) THOMASSON, Defendant/Appellant.**

Court of Appeals of Tennessee,
Middle Section.

Feb. 4, 1994.

Permission to Appeal Denied by Supreme Court June 6, 1994.

Alfred H. Knight, Willis & Knight, Nashville, for appellant.

W. Ovid Collins, Jr., Cornelius & Collins, Nashville, for appellee.

### OPINION

LEWIS, Judge.

This is an appeal from the judgment of the Chancery Court which issued a mandatory injunction to the defendant/appellant to re-

move a partially completed deck and stairs she had constructed from the second floor of her condominium unit. The injunction also required her to reinstall preexisting windows in place of doors she had installed. In the alternative, Defendant was allowed to "retain the one door leading from her master bedroom and construct a small balcony with no stairs in place of the deck."

The Chancellor, following a two day evidentiary hearing, filed his "Findings of Fact and Conclusions of Law." Following a review of this record, we adopt those findings of fact which are as follows:

1. Construction of the Regency Park Condominiums on Timber Lane in Nashville was begun in late 1964 pursuant to a recorded Master Deed and according to plans approved by the Planning Board of Nashville.

2. A total of 50 units were completed in successive phases. Included were a number of two bedroom houses, three bedroom houses and four bedroom houses, grouped in clusters in several separate buildings. Only the two bedroom units, which were slightly recessed because of their smaller size, were equipped with balconies attached to the main wall at the back of the units at the second floor level.

3. The condominiums were designed by Robert M. Street, a Nashville architect, in compliance with the various construction codes in effect in 1964.

4. Defendant and her husband, the late I.C. Thomasson, purchased Unit No. 658 in January, 1971. It contained three bedrooms but no balcony. Mr. Thomasson served as President of the plaintiff association for three years but died on February 8, 1989.

5. In November 1989, defendant, a licensed architect, orally requested Paul Hargis, President of plaintiff's Board of Directors, to determine whether the Board would approve her construction of a balcony at the rear second floor level of her unit. Mr. Hargis promptly assembled four members of the Board in an informal meeting since no regular meeting was scheduled until the following January. The four Board members were unanimously opposed to defendant's proposal and Mr. Hargis telephoned defendant and so advised her.

6. Without further notice to the Board defendant, during the last of December 1989 or the first of January 1990, proceeded to commence construction by removing two windows from the back wall of her unit and replacing them with doors.

7. On January 3, 1990 at the Board's direction, Frank Ghertner, the Managing Agent, telephoned and wrote defendant, requesting that she submit written plans of her proposed construction for the Board's further consideration and suggesting the doors might present a problem.

8. About March 5, 1990 defendant submitted a colored drawing of a proposed deck, rather than a balcony, spanning the rear wall of her unit at the second floor level. The existing balconies on the two bedroom units were cantilevered, being supported only by brackets attached to the wall. The deck, on the other hand, was to be supported by posts resting on the concrete floor of the patio at the rear of the unit.

9. On March 7, 1990 Mr. Ghertner wrote defendant acknowledging receipt of the drawing and stating that the Board of Directors had not approved the work but had taken the matter under advisement and would advise defendant as to their decision at a later date.

10. At the Board's direction, Mrs. Alfred T. Adams, Jr. and Charles C. Trabue, Jr., consulted Robert H. Street and requested his recommendation. Following their conference, Mr. Street was out of the country for two weeks but, on May 1, 1990, wrote Mr. Trabue that he could not approve the proposed deck addition and suggested instead that defendant be given permission to construct a small balcony conforming to those previously installed outside bedroom windows of two other three bedroom units. He recommended that defendant be allowed to retain the door installed in the wall of her bedroom but that she be required to restore the bathroom window. On May 7, 1990, plaintiff's attorney wrote defendant that the

Board had adopted the architect's recommendation and that she should proceed accordingly. A copy of Mr. Street's letter was enclosed.

11. Defendant did not respond to the letter or communicate further with the Board but employed counsel who negotiated unsuccessfully with the Boards representatives.

12. In early August 1991, without notice to either the Board or her counsel, defendant employed a contractor, obtained a building permit and commenced construction of a second floor deck addition which was much larger and more elaborate than that pictured in the colored drawing submitted to the Board and also contained a circular stairway. Construction was suspended by the issuance of the Court's temporary re[s]training order on August 8, 1991 and has not been resumed.

13. The rear wall of defendant's unit is located on the 50 foot setback line from the boundary of the condominium property. The drawing prepared by defendant's engineer indicated that the proposed deck would extend some ten feet beyond the setback line and defendant's expert witness testified that such an encroachment would require a variance. Also, from the dimensions shown on the drawing, it appears that the proposed deck would have an area of 204 square feet, as contrasted with the area of the balcony authorized by the Board which would be on 8.75 square feet. Defendant's application for a building permit was based on the March 5, 1990 colored drawing, not the plan prepared by her engineer.

We reiterate that these findings of fact are supported by the record and the preponderance of the evidence and therefore adopted by this court.

Defendant/appellant has presented two issues for our consideration. They are as follows:

I. DOES THE BOARD OF DIRECTORS OF A CONDOMINIUM ASSOCIATION ACT ARBITRARILY, CAPRICIOUSLY AND UNREASONABLY, WHEN IT PROHIBITS A UNIT OWNER FROM CONSTRUCT-ING A DECK AND STAIRS TO SERVE AS A FIRE EXIT FROM HER UNIT, UNDER THE FOLLOWING CIRCUMSTANCES:

A. The Prohibition Was Not Made Pursuant To Any Specific Architectural Or Other Standard, But Was Made Pursuant To A Provision Of The Condominium Documents Permitting The Construction Of Improvements Unless Objected To By The Board.

B. The Board Had In The Past Permitted The Construction Of Balconies That Did Not Conform To The General Architecture Of The Condominium.

C. It Is Undisputed That The Deck And Stairs Can Be Seen From No Vantage Point, Except From A Small, Relatively Inaccessible Area Immediately Behind The Unit.

D. Due To The Uniquely Inaccessible Location Of The Unit, The Deck And Stairs Are Required In Order To Provide A Reasonable Second Egress From The Unit In The Event Of A Fire.

E. In Prohibiting The Improvement, The Board Did Not Discuss, And Apparently Did Not Consider, The Visibility Or Safety Necessity Of The Improvement.

II. CONSIDERING THE ABOVE FACTS, AND THE RESPECTIVE BENEFITS AND BURDENS THAT WOULD ENSUE TO THE PARTIES, DID THE CHANCELLOR HAVE AUTHORITY UNDER TENNESSEE LAW TO IMPOSE A MANDATORY INJUNCTION REQUIRING THE UNIT OWNER TO TEAR DOWN THE PARTIALLY CONSTRUCTED DECK AND STAIRS, AND TO REPLACE THEM WITH EITHER (1) SMALL WINDOWS, WHICH PROVIDE NO EGRESS TO THE OUTSIDE OF THE BUILDING OR (2) A SMALL BALCONY WITH NO STAIRS, WHICH THE OWNER DOES NOT WANT, AND WHICH IS USELESS TO HER AS A FIRE EXIT.

We will discuss the issues together as have both the plaintiff and defendant.

When a person purchases a condominium unit they consent to having restrictions placed upon the use and improvement of their property for the benefit of the condominium as a whole. But no owner is assumed to consent to arbitrary and capricious restrictions which achieve no positive benefits. *See Note, Judicial Review of Condominium Rulemaking,* 94 Harv.L.Rev. 647 (1981). Condominium owners live in close proximity and use facilities in common. Therefore "each unit owner must give up a certain degree of freedom of choice which he might otherwise enjoy in separate, privately owned property." *Hidden Harbour Estates, Inc. v. Norman,* 309 So.2d 180, 182 (Fla.Dist. Ct.App.1975). "[T]he association is not at liberty to adopt arbitrary or capricious rules bearing no relationship to the health, happiness and enjoyment of life of the various unit owners." *Id.* When a condominium board has discretion to reject or accept improvements without any specific standards, it has an affirmative burden to establish that any restriction it employs significantly promotes the health, safety or enjoyment of the unit owners in general. *See Hidden Harbour Estates, Inc. v. Basso,* 393 So.2d 637 (Fla. Dist.Ct.App.1981).

The defendant relies heavily upon *Hidden Harbor Estates, Inc. v. Basso,* 393 So.2d 637 (Fla.Dist.Ct.App.1981). Following our review of that case, we are of the opinion that it affords no basis for determination that the Chancellor in the instant case abused his discretion in granting a mandatory injunction. In *Basso* there was not an attempt by the condominium unit owner to alter the exterior of his unit but rather he attempted to maintain a shallow water well on a lot owned by him. The court in *Basso* quoted from and distinguished its ruling in *Sterling Village Condominium, Inc. v. Breitenbach,* 251 So.2d 685 (Fla.Dist.Ct.App.1971). In *Breitenbach* the court granted a mandatory injunction requiring the removal of glass jalousies and the replacement of screen enclosures to their original condition. The court in *Basso* stated that even though Breitenbach's attempt to replace the screen enclosure was a reasonable one, and would have doubtlessly improved the unit, the court was nevertheless "impelled to uphold the use restrictions in order to vindicate the condominium association's interest in maintaining a uniform exterior." *Basso,* 393 So.2d at 639. The court further held that the replacement of a screen enclosure with glass jalousies was a "material alteration" to the common elements of the condominium. *Breitenbach,* 251 So.2d at 688. The plaintiffs in the instant case insist that the replacement of the windows with doors and the construction of a large deck and staircase on the common elements of Regency Park are "structural modifications and alterations" to defendant's condominium unit which are prohibited by the association's by-laws and the master deed.

Moreover, in *Pepe v. Whispering Sands Condominium Ass'n,* 351 So.2d 755 (Fla. Dist.Ct.App.1977) the court held that a declaration of condominium "assumes some of the attributes of a covenant running with the land, circumscribing the extent and limits of the enjoyment and use of real property." *Id.* at 757. The *Basso* court noted that the trial court has "wide discretion in denying or granting an injunction, and an appellate court will not interfere where no abuse of discretion has been made to appear." *Basso,* 393 So.2d at 640. The court in *Basso* restricted its decision to the facts of that case, and a concurring opinion stated that the board could return to court later if it could produce evidence that the well had increased the salinity of the condominium's water supply or had stained the sidewalks or other common areas of the condominium, which the board had alleged but had not been able to prove in the original case. *Id.* at 640–41.

Defendant also relies upon *Smith v. Rodgers,* 677 S.W.2d 1 (Tenn.App.1984) wherein the court refused to grant a mandatory injunction requiring the defendant to remove dirt from the plaintiff's property. The bases for the court's decision in *Smith v. Rodgers* was that the application for an injunction was not timely made and that plaintiff had an adequate remedy for damages at law. *Id.* at 4. That factual situation is not present in the instant case.

In *Brandon v. Stover,* 60 Tenn.App. 417, 447 S.W.2d 374 (1969) the court refused a mandatory injunction requiring the removal

of a house which defendant had already moved once to get it off a TVA easement. The complainants in *Brandon* averred that if defendants were allowed to locate the house upon said lot, such location would violate ·a certain restrictive covenant on all lots in the subdivision. *Id.* at 375–76. The court held in favor of the defendant on the determinative question as to violation of a restrictive covenant. *Id.* at 379. The court also held that the injunction was not applied for with reasonable promptness. *Id.* This court also denied a mandatory injunction in *Morrision v. Jones,* 58 Tenn.App. 333, 430 S.W.2d 668 (1968) because the court found there was a genuine dispute as to the location of a boundary line and damages afforded an adequate remedy.

We have reviewed each of the cases cited and relied upon by the defendant/appellant and find that they are inapposite to the facts of the instant case.

■ In the instant case, the master deed specifically provides for the remedy of injunction, and it has not been insisted on behalf of the defendant either at trial or on appeal that the plaintiff had an adequate remedy at law in damages. While there was testimony that property values in Regency Park would be adversely affected if the board's control and alterations to the exterior units should be undermined by court approval of the defendant's unauthorized construction of the proposed deck, it would be impossible to quantify such damages. Furthermore, such damages would not satisfy the need to preserve the architectural uniformity of the common elements.

In *Wescott v. Burtonwood Manor Condominium Ass'n Bd. of Managers,* 743 S.W.2d 555, (Mo.App.1987) the court held that unit owners' construction of improvements without permission of the condominium association board of managers, and in violation of condominium by-laws, warranted the issuance of a mandatory injunction to remove flood retaining walls and glass greenhouse covers from common elements, even though they had been erected to prevent flood damage to the owners' units. *Id.* at 561.

In *The Fountains of Palm Beach Condominium, Inc. v. Farkas,* 355 So.2d 163 (Fla. Dist.Ct.App.1978) the defendant/owner's husband attempted to obtain permission for the construction of a patio on the common elements. The management firm told him that it had no objections, and the board of directors of the condominium association informed him that they had no legal status and were therefore unable to grant or deny permission. *Id.* at 163. The owner proceeded with construction, and the association filed suit seeking a mandatory injunction requiring the removal of the patio slab at the owner's expense. *Id.* The Declaration of Condominium provided that each owner agreed not to make structural additions or alterations to his unit and not to make alterations of the common elements without the prior written consent of the management firm and the association. *Id.* at 164. The declaration also provided for the remedy of injunction to seek compliance with the provisions of the declaration. *Id.* The court cited *Sterling Village Condominium, Inc. v. Breitenbach,* 251 So.2d 685 (Fla.Dist.Ct.App.1971) and granted a mandatory injunction requiring the removal of the patio slab, even though defendant argued that the failure of the management firm and the association to object to her intentions should operate as an estoppel or as a waiver of the association's right to complain after the patio slab had been laid. *Farkas,* 355 So.2d at 164.

In the instant case defendant argues that the plaintiff/board waived its right to object to her construction of a deck, because it waited sixty (60) days after she had submitted her colored drawing to notify her that it had adopted the architect's recommendation which disapproved her proposal but offered an alternative. The by-laws required an "answer" from the board within fifteen (15) days. She received a letter from the condominium manager that the board had not approved her proposal but had taken the matter under advisement and would advise her as to its decision at a later date. We are of the opinion that the defense of waiver is not valid.

The facts of *The Courts at Beachgate v. Bird,* 226 N.J.Super. 631, 545 A.2d 243 (Ch. 1988) are similar to the instant case. *Bird* involved the unauthorized replacement of

original windows with nonconforming windows. *Id.,* 545 A.2d at 245. The language of the master deed as to injunctive relief and the by-laws as to notifying the association in writing and the association's obligation to answer, are almost identical with those of Regency Park, except that the Beachgate Association was given thirty (30) days to answer a written notice from the unit owner. The court rejected the defense that the owner had obtained oral permission from the condominium manager. *Id.* at 246. The court noted that the board of directors of a condominium association is vested with substantial discretion in the performance of its duties and responsibilities and that the business judgment rule applies. *Id.* at 248–49. "The rule requires that there be a showing of fraud or lack of good faith in the conduct of the affairs of a corporation in order to question decisions of its board of directors." *Id.* at 249. The court also observed that the two prong test to determine if a condominium association has acted properly is "(1) whether its action was authorized by statute or its own by-laws, and, if so, (2) whether the action was fraudulent, self-dealing or unconscionable." *Id.* (quoting *Thanasoulis v. Winston Tower 200 Ass'n Inc.,* 214 N.J.Super. 408, 411, 519 A.2d 911 (App.Div.1986). The court further noted that "the expense which defendants' predecessor in title incurred was self-inflicted as the result of a known and calculated risk." *Bird,* 545 A.2d at 249. In the instant case, also, the defendant is the author of her own misfortune.

In *Monday Villas Property Owners Ass'n v. Barbe,* 75 Ohio App.3d 167, 598 N.E.2d 1291 (1991) several condominium owners had erected ham radio antennas. The case was initially referred to a referee whose report favored the unit owners because the referee found, among other things, that the inconvenience to the association in having antennas remain was less than the inconvenience to the unit owners in having them removed. *Barbe,* 598 N.E.2d at 1293. The trial court rejected the referee's report and ordered the antennas removed. *Id.* On appeal the unit owners argued that the antennas did not pose any threat to the aesthetic value of the condominium property and challenged the reasonableness of the association's rules and regulations. *Id.* at 1294. The court applied a three part test to determine the reasonableness of the association's actions: "(1) whether the decision was arbitrary and capricious, (2) whether it was nondiscriminatory and even-handed, and (3) whether it was made in good faith for the common welfare of the owners and occupants of the condominium." *Id.* (quoting *River Terrace Condominium Ass'n v. Lewis,* 33 Ohio App.3d 52, 514 N.E.2d 732 (1986). The court further stated that there is law "to support the notion that rules created to affect the aesthetics and uniformity of appearance, and thereby depriving condominium owners of some freedom to do with their property as they wish, are valid." *Id.,* 598 N.E.2d at 1249 (citations omitted).

In *Wrightsville Winds Townhouses Homeowners' Ass'n. v. Miller,* 100 N.C.App. 531, 397 S.E.2d 345 (1990) a mandatory injunction issued requiring defendants to remove a shower roof and stall, a partition at the end of the parking area, and a partition between the parking area and the unit next door which had been erected on common elements of the condominium in violation of the association's rules and by-laws. The unit owner argued that the evidence failed to demonstrate how the other owners were harmed by the structures. *Id.* at 347. The court noted that there must be a showing of irreparable harm, but explained: "This standard, however, does not require a showing that the injury is beyond repair, but that the injury is one *to which the complainant should not be required to submit, or the other party permitted to inflict ....*" *Id.* (citations omitted).

Here the plaintiff has argued that the decision of its board in offering defendant the option to construct a small balcony similar to those previously authorized for other three bedroom units owned by Thombs and Herbert, two unit owners who had been permitted to build only small balconies, was not arbitrary and unreasonable because, inter alia, it was even handed and nondiscriminatory. Plaintiff argues that to permit defendant to build a large deck would be unfair to Thombs and Herbert. The defendant's situation would be much better than that of

either Thombs or Herbert, because she would have a door instead of a small window.

In *Chattel Shipping & Inv., Inc. v. Brickell Place Condominium,* 481 So.2d 29 (Fla.Dist. Ct.App.1985) the issue of unequal and arbitrary enforcement of a restriction was raised. Some forty-five unit owners had enclosed their balconies without prior approval as required by the declaration of condominium. *Id.* at 30. The board of the condominium association received a letter from city officials that the enclosures violated the city's zoning ordinance. *Id.* The condominium association board decided and informed the owners that it would take no action with respect to existing enclosures, but would prohibit future balcony constructions. *Id.* Subsequently Chattel Shipping enclosed the balcony of its unit, and the association sued as for a mandatory injunction requiring the balcony's removal. The trial court granted a mandatory injunction and the intermediate court affirmed, rejecting appellant's argument that the failure to require the dismantling of the previous enclosures constituted an "unequal and arbitrary enforcement of the restriction." *Id.* The court stated however that: "It is important also that, when selective enforcement has in fact been demonstrated, the association is said to be 'estopped' from applying a given regulation." *Id.*

■ Defendant argues that plaintiff had the burden of proving defendant's proposed deck "significantly and tangibly undermined the health, safety or welfare of the condominium as a whole." Cases which deal with the unauthorized alterations of unit exteriors are to the contrary so long as the restriction is reasonably applied.

The defendant also contends that a mandatory injunction "must be justified by considerations of public policy," but cites no cases that support this contention, and we have found none which support defendant's contention.

■ The mandatory injunction in the instant case does not violate established public policy.

The public policy of Tennessee with respect to condominiums is set forth in the Horizontal Property Act, Tennessee Code Annotated section 66–27–101, et. seq. "General common elements" are defined to include the main walls, entrances and exits. Tenn.Code Ann. § 66–27–102(a)(7)(B) (1993). Unit owners have only "a common right to share, with other co-owners, in the common elements of the property." Tenn.Code Ann. § 66–27–106 (1993). "The administration of every building constituted into horizontal property shall be governed by bylaws which shall be inserted in or appended to and recorded with the master deed or declaration, as the case may be." Tenn.Code Ann. § 66–27–111 (1993).

The action taken by the condominium association's board in the instant case was in accord with and not in violation of the foregoing statutes.

■ The defendant also alleges that the Chancellor incorrectly imposed a burden on her to prove her affirmative defense of a code violation. "For an affirmative defense, which is affirmatively pleaded, the burden is on the pleader to prove same." 11 Tenn.Jur. *Evidence* § 50 (1984). Because defendant raised the defense of code violation, she had the burden of proving this defense, and she did not meet this burden.

Following our review of the record in this case, we are persuaded that the findings of the Chancellor and the action taken by the plaintiff's board of directors was not arbitrary, capricious or unreasonable, and the judgment of the Chancellor is supported by a preponderance of the evidence. The Chancellor did not abuse his discretion in granting a mandatory injunction. The judgment of the trial court is affirmed and the cause remanded to the trial court for the enforcement of its judgment, collection of costs which are assessed to defendant/appellant, and for any further necessary proceedings.

CANTRELL and KOCH, JJ., concur.