# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

**June 5, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| VILLAGES OF BRENTWOOD | ) | |
| HOMEOWNERS ASSOCIATION, INC., | ) | |
| | ) | |
| Plaintiff/Appellee, | ) | Davidson Chancery |
| | ) | No. 95-3733-III |
| VS. | ) | |
| | ) | Appeal No. |
| STEVEN J. WESTERMANN and wife | ) | 01A01-9708-CH-00388 |
| MARIA A. WESTERMANN, | ) | |
| | ) | |
| Defendants/Appellants. | ) | |

APPEAL FROM THE CHANCERY COURT
FOR DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE ELLEN HOBBS LYLE, CHANCELLOR

For Plaintiff/Appellee:

Robert F. Spann
Nashville, Tennessee

For Defendants/Appellants:

John A. Ascione
Nashville, Tennessee

AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal involves the enforcement of the restrictive covenants in a Nashville subdivision. After two residents began to construct improvements on their property without first obtaining approval of the subdivision's architectural committee, the homeowners association filed suit in the Chancery Court for Davidson County seeking injunctive relief to enforce the architectural control provisions in the subdivision's restrictive covenants. The trial court heard the case without a jury and issued an injunction directing the residents to cease the construction and to restore their property to a condition consistent with the subdivision covenants. The residents have appealed. Since neither party has filed a verbatim transcript of the proceedings or a statement of the evidence, we have reviewed the papers filed in the trial court and have determined that they contain no basis for reversing the trial court. Accordingly, the trial court's judgment is affirmed.

## I.

In March 1993 Steven and Maria Westermann bought a house in a Nashville subdivision called the Villages of Brentwood. Their property, like the other property in the subdivision, was subject to recorded restrictive covenants governing such things as maintenance assessments, dwelling size, and architectural uniformity. One of the restrictions required residents desiring to build a fence, wall, or other structure on their property to first obtain the approval of the board of directors of the homeowners association or an architectural committee appointed by the board.[1]

In September 1995 the Westermanns began constructing an in-ground pool, a retaining wall, a privacy fence, and an expansion of their deck without first seeking

---

[1]Art. V of the Villages of Brentwood restrictive covenants provides in applicable part:

ARCHITECTURAL CONTROL
No building, fence, wall or other structure shall be commenced, erected or maintained upon the Properties, nor shall any exterior addition to or change, including color, or alteration therein be made until the plans and specifications showing the nature, kind, shape, height, materials, and location of the same shall have been submitted to and approved in writing as to harmony of external design and location in relation to surrounding structures and topography by the Board of Directors of the Association, or by an architectural committee composed of three (3) or more representatives appointed by the Board.

the approval of the homeowners association. Soon after construction began, the homeowners association notified the Westermanns in writing that their project violated the subdivision's restrictive covenants because their plans had not been reviewed or approved. The homeowners association requested the Westermanns to cease construction and to take steps to obtain approval of their project. The Westermanns ignored the homeowners association's letter and continued construction.

The homeowners association sent a second letter to the Westermanns on October 19, 1995. When the Westermanns disregarded this letter, the homeowners association filed suit on November 29, 1995 in the Chancery Court for Davidson County requesting injunctive relief to enforce the subdivision's restrictive covenants. The trial court issued a temporary restraining order stopping the construction. Approximately three months later, the trial court entered an order directing the Westermanns to submit their plans to the homeowners association for review and approval. The Westermanns submitted plans to the homeowners association on March 26, 1996. On April 8, 1996, the attorney representing the homeowners association informed the Westermanns that their plans were incomplete and requested a more complete set of plans. The Westermanns provided new plans on June 7, 1996, and on June 26, 1996, the architectural review committee disapproved the Westermanns' project.

The trial court heard the evidence on December 4, 1996 and entered a detailed memorandum opinion on January 24, 1997. The trial court concluded that the architectural committee had acted reasonably and in good faith and directed the parties to attempt to reach an agreement concerning the Westermanns' project. After the parties were unable to agree to a mutually satisfactory resolution of their differences, the trial court entered a final order on April 10, 1997, ordering the Westermanns to remove all construction materials from their property and to restore the property to a condition consistent with the subdivision's restrictive covenants.

**II.**

We turn first to a preliminary issue concerning the scope of this appeal. Two settled principles of appellate review come into play here. First, appellate courts cannot review the evidence de novo in accordance with Tenn. R. App. P. 13(d) in the absence of a verbatim transcript or statement of the evidence and, therefore, presume that a trial court's order has adequate evidentiary support in the absence of an evidentiary record. *See Word v. Word*, 937 S.W.2d 931, 932 (Tenn. Ct. App. 1996); *Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992); *Scarbrough v. Scarbrough*, 752 S.W.2d 94, 97 (Tenn. Ct. App. 1988). Second, appellate courts will ordinarily decline to consider issues being raised for the first time on appeal. *See Civil Service Merit Bd. v. Burson*, 816 S.W.2d 725, 734-35 (Tenn. 1991); *Department of Human Servs. v. Defriece*, 937 S.W.2d 954, 960 (Tenn. Ct. App. 1996). Thus, arguments not asserted at trial are deemed waived on appeal. *See Devorak v. Patterson*, 907 S.W.2d 815, 818 (Tenn. Ct. App. 1995).

Every one of the issues raised by the Westermanns on appeal are affected by one or both of these principles. The Westermanns argue for the first time on this appeal that the committee should be deemed to have approved their construction plans because it did not decline to approve their project within thirty days after they first submitted a set of plans on March 26, 1996. Because the record contains no indication that they presented this argument to the trial court, we find that they have waived their right to assert this issue for the first time on appeal.[2] The same fate must befall the Westermanns' argument relating to the speculative nature of the architectural committee's decision because this argument was likewise not presented to the trial court.[3]

The Westermanns' remaining issues challenge the reasonableness of the architectural committee's disapproval of their project. The question of whether the architectural committee acted reasonably is heavily fact-dependent and must be considered in light of the unique circumstances of the case. *See Indian Hills Club*

---

[2]We would reach the same conclusion were we to address the merits of this issue. The thirty-day period in Article V of the restrictive covenants did not begin to run on March 26, 1996 because the plans submitted to the homeowners association were not complete. After the Westermanns submitted a complete set of plans on June 6, 1996, the architectural committee declined to approve the plans on June 26, 1996 - well within the thirty-day period.

[3]In addition, without a factual record, we have no basis for determining that the architectural committee acted unreasonably when it determined that the Westermanns' project would change or retard the flow of groundwater, that it would likely have a substantial negative impact on neighboring property, and that it could result in the diminution of the value of the adjacent property.

*Homeowners Ass'n, Inc. v. Cooper*, No. 01A01-9507-CH-00319, 1995 WL 763823, at *4 (Tenn. Ct. App. Dec. 29, 1995) (No Tenn. R. App. P. 11 application filed). This record lacks a verbatim transcript of the proceedings before the trial court or even a statement of the evidence. In addition, the record does not contain the exhibits filed with and considered by the trial court. Thus, we are unable to examine the review criteria used by the architectural committee to determine whether the Westermanns' project should be approved. In the absence of this evidentiary material, we are able only to review the legal issues raised by the Westermanns that can be decided based on the technical record alone.

## III.

Restrictive covenants conditioning the right of property owners to make improvements on the approval of a homeowners association or architectural committee are generally valid and enforceable. *See Association of Owners of Regency Park Condominiums, Inc. v. Thomasson*, 878 S.W.2d 560, 563-565 (Tenn. Ct. App. 1994); *see also Snowmass Am. Corp. v. Schoenheit*, 524 P.2d 645, 647-48 (Colo. Ct. App. 1974); *Hollingsworth v. Szczesiak*, 84 A.2d 816, 821 (Del. Ch. 1951). The prevailing view in this jurisdiction is that these sorts of restrictive covenants will be enforced as long as the entity administering them acts reasonably and in good faith. *See Indian Hills Club Homeowners Ass'n, Inc. v. Cooper*, 1995 WL 763823, at *3.

Restrictive covenants are enforceable even though they vest discretionary powers with the architectural committee. *See Country Club of La. Prop. Owners Ass'n, Inc. v. Dornier*, 691 So. 2d 142, 150 (La. Ct. App. 1997) (Fitzsimmons, J., concurring). The courts will uphold review criteria as long as they provide a reasonable framework for the committee's decision, *see Winslette v. Keeler*, 137 S.E.2d 288, 289 (Ga. 1964), and as long as the committee developing the criteria is acting reasonably and in good faith. *See Indian Hills Club Homeowners Ass'n, Inc. v. Cooper*, 1995 WL 763823, at *4; *Country Club of La. Prop. Owners Ass'n, Inc. v. Dornier*, 691 So. 2d at 150. When the restrictive covenants establish a review committee but do not contain specific criteria for the committee to follow, the validity of the criteria and the committee's interpretation of the criteria will be judged by a

standard of reasonableness.  *See 4626 Corp. v. Merriam*, 329 So. 2d 885, 889 (La. Ct. App. 1976).

## A.

In light of these authorities, we decline to find as a matter of law that the homeowners association of the Villages of Brentwood was acting unreasonably when it prepared criteria that would be used to determine the acceptability of proposed improvements to houses in the subdivision.  On the contrary, we find that the homeowners association could establish criteria as long as they were consistent with Article V of the restrictive covenants that permits considering the "nature, kind, shape, height, materials, and location" of proposed buildings, fences, walls, or other structures.  Because the review criteria employed by the Villages of Brentwood are not in the appellate record, we will presume they are consistent with the restrictive covenants, that they are reasonable, and that they provided a reasonable basis for the architectural committee's decision.

The Westermanns' ignorance of the existence or substance of the review criteria is of little consequence.  The restrictive covenants in their deed put them on notice that the homeowners association retained the right to approve exterior improvements to their property.  Had the Westermanns complied with Article V before they commenced construction, they would have learned of the review criteria and would have been able to conform their improvements to the criteria's requirements.  By deciding to proceed with construction without first seeking and obtaining the required approvals, the Westermanns assumed the risk that their proposed improvements would not be acceptable to the architectural committee.

## B.

The Westermanns also insist that the architectural committee's refusal to permit them to construct their privacy fence deprives them of the free and full use and enjoyment of their property. Specifically, they assert that limiting the height of their

fence to six feet[4] is unreasonable because it will interfere with their privacy. Because of the sloping elevation of their lot, they insist they should be able to build a fence taller than six feet.

We find it impossible to review this argument based on the record before us. The trial court noted that a civil engineer testified that the Westermanns required a retaining wall on their property "because of the slope of the yard" and that a retaining wall that was six feet high would not "be adequate to retain the proposed improvement." However, we find nothing in the technical record that sheds any light on the relationship between the privacy fence, the retaining wall, and the slope of the Westermanns' yard. While the Westermanns state in their brief that "the effect of a six feet privacy fence erected at the lower side of [their] yard . . . is reduced substantially," the mere contentions in a party's brief cannot be considered as evidence. *See Outpatient Diagnostic Ctr. v. Christian*, No. 01A01-9510-CV-00467, 1997 WL 210842, at *2 (Tenn. Ct. App. April 30, 1997) (No. Tenn. R. App. P. 11 application filed). In the absence of an evidentiary record, we are precluded from considering this issue. *State v. Draper*, 800 S.W.2d 489, 493 (Tenn. Crim. App. 1990).

## IV.

We do not have before us a record of the evidence considered by the trial court, including the written criteria considered by the architectural committee. The trial court had that evidence before it and applied the correct standard of review. Accordingly, we will presume that the evidence supported the trial court's conclusion that the architectural committee acted reasonably and in good faith. Based on that presumption, we affirm the judgment and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to Steven J. Westermann and Maria A. Westermann and their surety for which execution, if necessary, may issue.

---

[4]The restrictive covenants do not prescribe specific fence heights; however, Article V empowers the architectural committee to consider the "harmony of external design and location in relation to surrounding structures." In light of the trial court's finding that "all other fences in the development are six feet," we assume the Westermanns are challenging the validity of Article V as applied to them.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
BEN H. CANTRELL, JUDGE


_____
WILLIAM B. CAIN, JUDGE