IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 4, 2012

**THE PRESERVE AT FORREST CROSSING TOWNHOME
ASSOCIATION, INC. v. MARSHA DEVAUGHN and KEENE PATTERSON**

**Appeal from the Chancery Court for Williamson County**
**No. 39203     James G. Martin, III, Judge**

**No. M2011-02755-COA-R3-CV - Filed January 30, 2013**

A townhome owner and her tenant challenge an amendment adopted by the owner's townhome association prohibiting the owner from leasing her unit to a third party. The owner purchased her unit before there were any restrictions on leasing individual units. The amendment was adopted in accordance with the Horizontal Property Act and in accordance with the documents governing the units where she lives. The trial court granted the association's motion for summary judgment enjoining the owner from renting her townhome to a third party and requiring the tenant to vacate the unit. On appeal we conclude the amendment is enforceable and affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Andrew Maloney, Nashville, Tennessee, for the appellants, Marsha DeVaughn and Keene Patterson.

Keith H. Solomon, Brentwood, Tennessee, for the appellee, The Preserve at Forrest Crossing Townhome Association, Inc.

**OPINION**

Marsha DeVaughn purchased a townhouse at The Preserve at Forrest Crossing Townhomes (The "Preserve") in September 2004. When she purchased her unit, the administration and management of The Preserve was governed by bylaws set forth in the "Declaration of Covenants and Restrictions for The Preserve at Forrest Crossing, Williamson County, Tennessee" (the "Declaration"), which was recorded at the Williamson County

Register of Deeds. The Declaration defines the individual parcels of real property as "Private Elements." When Ms. DeVaughn purchased her townhome in 2004 the Declaration did not prohibit her from leasing her unit to third parties. The Declaration contained a section titled "Amendment," however, that stated:

> The terms, provisions, covenants and restrictions of this Declaration may be amended upon the approval of such amendment by: (a) those members of the Association who own, in the aggregate, no fewer than sixty-seven percent (67%) of the Private Elements not owned by the Declarant[1], and (b) the Declarant, if the Declarant shall then own any Private Element or any other portion of the Overall Property. . . .

> . . . . .

> Each person who shall own any Private Element, by acceptance of a deed or other conveyance thereto, and by acceptance of a deed or other conveyance thereto, and by acceptance of such ownership, and by taking record title thereto, and each holder of a Mortgage upon any portion of any Private Element, by acceptance of such Mortgage, thereby agrees that the terms, provisions, covenants and restrictions of this Declaration may be amended as provided in this Article X.

The Declaration was amended in May 2006, two years after Ms. DeVaughn purchased her unit. A section was added to Article VII for the stated purpose of promoting "the orderly, attractive and lasting integrity of the community and [to] enhance the value of the property compromising The Preserve." The new section was called "Restriction on Leasing" and provided:

> The purchase of property for the purpose of offering it for residential lease is strictly prohibited. Selling property under a lease/purchase agreement or installment deed is prohibited. It is the intent of the homeowners that property in The Preserve be owner occupied. The owner of a Private Element may not lease the property to tenants unless he or she has first secured the written authorization of the Board of Directors. Property currently being leased at the time of recordation of this Amendment shall be grandfathered in such that the current owner may continue to lease the premises. But no future owner of the property may lease-out the premises.

---

[1]The Declarant is defined as Pulte Homes Tennessee Limited Partnership, a Nevada limited partnership.

The Declaration was amended again two years later, in May 2008. The new section was called "Leasing Prohibited" and stated in pertinent part:

> Effective upon recordation of this Amendment with the Register's Office for Williamson County, Tennessee, rental or leasing of Private Elements is prohibited; provided however, that all leases in effect on the date of recordation of this Amendment shall be unaffected hereby until the expiration of the current term of each such lease (or in the case of periodic tenancies, the expiration of the next period). Any inconsistency between this Amendment, on one hand, and any other provisions of the Declaration not amended hereby, any previous amendment to the Declaration or the Bylaws of the Association, on the other (including without limitation references to "tenants," "leases," or other terms related to leasing) shall be resolved in favor of this Amendment.

Ms. DeVaughn rented her townhouse to Keene Patterson beginning in January 2010. The Preserve notified both Ms. DeVaughn and Mr. Patterson that they were in violation of the Declaration. Despite The Preserve's request to Ms. DeVaughn and Mr. Patterson that Mr. Patterson vacate Ms. DeVaughn's townhouse, Mr. Patterson continued residing as a tenant at The Preserve.

The Preserve at Forrest Crossing Townhome Association, Inc. (the "Association"), which was the association representing the Preserve, filed a complaint against Ms. DeVaughn and Mr. Patterson in December 2010 seeking, *inter alia*, a mandatory injunction enjoining the continued rental by Mr. Patterson of Ms. DeVaughn's townhome in violation of the Declaration of Covenants and Restrictions. The Association filed a motion for summary judgment in September 2011. The trial court granted the Association's motion following a hearing and included the following findings in its Order:

> 5. Defendant, Marsha DeVaughn, purchased the townhome at 417 Chatsworth Court, Franklin, Tennessee located in Williamson County, Tennessee on September 17, 2004. Defendant, Keene Patterson, holds a leasehold interest in the townhome which he obtained on or about in January 2010 by written contract with Defendant DeVaughn, which was a one year lease. The lease expired in July, 2011 and Defendant Patterson now leases the property from Defendant DeVaughn as a month to month tenant.
>
> 6. When Defendant Marsha DeVaughn purchased her townhome, she consented to having restrictions placed upon the use and improvement of her property for the benefit of the townhome development as a whole. *Ass'n of Owners of Regency Park Condominiums v. Thomasson*, 878 S.W.2d 560

(Tenn. Ct. App. 1994), *McElveen-Hunter v. Fountain Manor Ass'n*, 386 S.E.2d 435 (N.C. App. 1989).

7.     Condominium and townhome owners live in close proximity and use facilities in common and therefore must give up a certain degree of freedom of choice which property owners might otherwise enjoy in separate, privately owned property. *Id*. (citing *Hidden Harbour Estates, Inc. v. Norman*, 309 So.2d 180, 182 (Fla. Dist. Ct. App. 1975)).

8.     Defendant Marsha DeVaughn purchased her property subject to the limitations set forth in the Master Deed and By-laws. The documents clearly state that they are subject to amendment by proper procedure. As such, Defendant Marsha DeVaughn could have no vested right in the status quo and no expectation that these governing documents are static. It is undisputed that the amendment prohibiting rental or lease of the units was adopted by proper procedure.

9.     The leasing restriction reasonably relates to the health, happiness and peace of mind of the owners of The Preserve at Forrest Crossing as a whole and the welfare of the townhome community outweighs an individual owner's interest in profit. *Ass'n of Owners of Regency Park Condominiums v. Thomasson*, 878 S.W.3d 560 (Tenn. Ct. App. 1994).

10.     The Court finds that the Motion for Summary Judgment should be granted to Plaintiff. It is therefore **ORDERED, ADJUDGED and DECREED**

        a.     that the Amendment to the Master Deed and By-laws dated May 8, 2008 and recorded in the Williamson County Register of Deeds Office in Book 4571, Page 173 is binding and enforceable to prohibit the rental of Defendant Marsha DeVaughn's property in The Preserve at Forrest Crossing;

        b.     that the Amendment to the Master Deed and By-laws dated May 8, 2008 and recorded in the Williamson County Register of Deeds Office in Book 4571, Page 173 is reasonable;

        c.     that a permanent injunction is GRANTED against Defendant Marsha DeVaughn prohibiting her from leasing or renting her townhome located at 417 Chatsworth Court, Franklin, Tennessee in violation of the Declaration of Covenants and Restrictions for The Preserve at Forrest

Crossing, along with all Amendments of said Declaration;

      d.    that Defendant Keene Patterson shall vacate the premises on or before sixty (60) days from the date this Order is entered . . . .[2]

Ms. DeVaughn and Mr. Patterson appeal the trial court's judgment, arguing that the retroactive application of the amendment prohibiting the leasing of properties as against Ms. DeVaughn is arbitrary and capricious as applied to them and that it is also unreasonable.

## ANALYSIS

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk Southern Railway Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Id.* Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). Those requirements are that the filings supporting the motion show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Blair*, 130 S.W.3d at 764.

The moving party has the burden of demonstrating it is entitled to judgment as a matter of law and that there are no material facts in dispute. *Martin*, 271 S.W.3d at 83; *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998). If the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of a genuine issue of material fact. *Martin*, 271 S.W.3d at 84; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *Staples v. CBL & Associates*, 15 S.W.3d 83, 86 (Tenn. 2000) (citing *Byrd v. Hall*, 847 S.W.2d, 208, 215 (Tenn. 1993)).

Ms. DeVaughn and Mr. Keene do not contend there are disputed issues of fact precluding summary judgment. Instead, they argue the Association was not entitled to summary judgment because the amendment prohibiting the leasing of individual townhomes was arbitrary and capricious as applied to Ms. DeVaughn since there was no prohibition on leasing units in The Preserve when she purchased her unit in 2004.

---

[2]The trial court also granted the Association damages for past due association fees and assessments as well as attorneys' fees. The court's award of damages and attorneys' fees are not at issue on appeal.

The Tennessee Horizontal Property Act applies to planned unit developments such as The Preserve.[3] *See* Tenn. Code Ann. § 66-27-101 *et seq*. The administration of planned unit developments is governed by bylaws, which are recorded along with the master deed. Tenn. Code Ann. § 66-27-111. Where the property includes private elements, the declaration shall include the covenants, conditions, restrictions, and bylaws governing the property. Tenn. Code Ann. § 66-27-102(10). When there are multiple owners of the private elements, as here, the owners of two thirds of the private elements may modify the bylaws. No modification is operative until it is recorded in the same office and in the same manner as was the master deed or lease or plat and original bylaws for the planned unit development. Tenn. Code Ann. § 66-27-112.

The record indicates that owners of at least 67% of the townhomes at the Preserve voted to amend the Declaration in May 2008 to prohibit the leasing of individual units and that the amendment was duly recorded with the Williamson County Register of Deeds on May 29, 2008. Moreover, the Association filed affidavits from the owners of thirty-nine different townhomes in support of its motion for summary judgment. Each of the owners testified as follows:

> 3. As a resident owner, I prefer all units in The Preserve at Forrest Crossing to be owner occupied; I have a long term financial stake in this community and I work hard to maintain my home and the common areas, which will hopefully result in a higher long-term market value for all units here.

> 4. I value the sense of community that comes with a stable neighborhood and fear that renters, if this leasing restriction is not enforced, will interfere with that sense of community.

> 5. I would like the restriction against leasing any townhomes in The Preserve at Forrest Crossing to be upheld and enforced.

As the trial court noted, the Court of Appeals has found that "[w]hen a person purchases a condominium unit they consent to having restrictions placed upon the use and improvement of their property for the benefit of the condominium as a whole." *Ass'n of*

---

[3]We note that condominiums created after January 1, 2009, are governed by the Tennessee Condominium Act of 2008, Tenn. Code Ann. § 66-27-201 *et seq*. That statute requires a declaration to include, *inter alia*, any restrictions on the use, occupancy, and alienation of the units. Tenn. Code Ann. §66-27-305((a)(11). The Preserve was created prior to 2009 and is therefore governed by the Horizontal Property Act, Tenn. Code Ann. § 66-27-101 *et seq.*

*Owners of Regency Park Condominiums v. Thomasson*, 878 S.W.2d 560, 563 (Tenn. Ct. App. 1994). The unit owner gives up a certain amount of freedom she would otherwise enjoy if living in a house located on a piece of separate, privately owned property. *Id.* (citing *Hidden Harbour Estates, Inc. v. Norman*, 309 So.2d 180, 182 (Fla. Dist. Ct. App. 1975)). The restrictions must not be arbitrary or capricious. They must bear a relationship to the health, happiness, and enjoyment of life of the unit owners as a whole. *Thomasson*, 878 S.W.2d at 563 (citing *Hidden Harbour Estates, Inc. v. Basso*, 393 So.2d 637, 640 (Fla. Dist. Ct. App. 1981)).

> Use restrictions are an inherent part of any common interest development and are crucial to the stable, planned environment of any shared arrangement. The purchaser of a condominium unit consents to restrictions placed on the use and improvement of the property for the benefit of the condominium as a whole, although no owner is assumed to consent to arbitrary and capricious restrictions which achieve no positive benefits. . . .

15B AM. JUR. 2D *Condominiums, Etc*. § 37 (2012).

We have not seen a case where a court in Tennessee has been faced with the same facts we have here. However, courts in other jurisdictions that have considered this issue have determined that a duly adopted amendment restricting the rental of individual units is binding on a unit holder who purchased her unit before the amendment became effective. In *Woodside Village Condominium Ass'n, Inc. v. Jahren*, 806 So.2d 452 (Fla. 2002), for example, the condominium association amended its declaration to limit the leasing of units to a 9-month term in any 12-month period. *Id*. at 454. The amendment was adopted in response to some owners' concerns that if units were not owner occupied, the other residents' quality of life and the market value of the units would be negatively impacted. *Id.* The unit owners who opposed the amendment asserted the restriction was unreasonable, arbitrary, and capricious, and deprived them of lawful uses which were permissible when they purchased their units. *Id.*

The trial court in *Woodside Village* invalidated the amendment, but the lower court was reversed on appeal. The Florida Supreme Court began its analysis by recognizing that condominium living is unique and involves a higher number of restrictions on individual unit owners than other property owners experience. *Id.* at 456. As a result, "increased controls and limitations upon the rights of unit owners to transfer their property are necessary concomitants of condominium living." *Id.* (quoting *Aquarian Found., Inc. v. Sholom House, Inc.*, 448 So.2d 1166, 1167 (Fla. Dist. Ct. App. 1984)).

When the *Woodside Village* defendants purchased their units, the condominium's declaration provided that it could be amended and set forth the procedure for doing so. 806 So.2d at 460. The *Woodside Village* court explained that restrictions contained in a condominium's declaration "should be clothed with a very strong presumption of validity when challenged" because unit holders purchase their individual unit knowing that restrictions may be imposed. 806 So.2d at 457 (citing *Hidden Harbour Estates, Inc. v. Basso*, 393 So.2d at 639-40). Thus, the *Woodside Village* court found, the defendants were "on notice that the unique form of ownership they acquired when they purchased their units . . . was subject to change through the amendment process, and that they would be bound by properly adopted amendments." *Id.* at 461.

Acknowledging that the amendment restricting leasing was intended to promote owner occupancy, which the court found to be consistent with condominium living, the *Woodside Village* court held the amendment was valid and enforceable against the defendants even though the restrictive amendment was not adopted until after the defendants purchased their units. *Id.* at 462. The *Woodside Village* court also relied upon a lower court's holding in *Flagler Federal Savings & Loan Ass'n v. Crestview Towers Condominium Ass'n*, 595 So.2d 198 (Fla. Dist. Ct. App. 1992), to support its conclusion. The *Flagler* court held that an amendment to a declaration prohibiting unit holders from leasing their units for any period of time applied to a unit holder which acquired its unit prior to the amendment because every owner purchases his or her unit knowing of and accepting the restrictions to be imposed. *Id.* at 200.

An appellate decision from Illinois involves similar facts. In *Apple II Condominium Ass'n v. Worth Bank & Trust Co.*, the Appeals Court of Illinois upheld the validity of a declaration amendment that restricted leasing a unit more than once during a person or entity's ownership, with no lease exceeding one year. 659 N.E.2d 95, 97 (Ill. App. Ct. 1995). The unit owners in *Apple II* purchased their unit before the condominium declaration contained any restrictions on leasing and argued the application of the amendment to them constituted an *ex post facto* modification of their contractual rights made without any consideration. *Id.* at 96. The appellate court disagreed and found "neither the fact that there were no restrictions on the property when they Harmons purchased their unit nor the fact that the Harmons purchased the property for investment purposes is relevant" and that "condominium owners do not have vested rights in the *status quo ante*." *Id.* at 97.

Courts in other jurisdictions have similarly held that a duly adopted amendment restricting either leasing or occupancy is binding on unit owners who purchased their units before the amendment became effective. *See, e.g., McElveen-Hunter v. Fountain Manor Ass'n, Inc.*, 386 S.E.2d 435, 436 (N.C. Ct. App. 1989) (court held occupancy and leasing restrictions in condominium amendment may bind unit owners who purchased their units

before amendment was adopted); *Hill v. Fontaine Condominium Ass'n, Inc.*, 334 S.E.2d 690, 690-91 (Ga. 1985) (court upheld condominium declaration amendment limiting permanent residence to people over 16 years of age, requiring couple who owned unit before amendment was adopted to move after baby was born); *Ritchey v. Villa Nueva Condominium Ass'n*, 146 Cal. Rptr. 695, 700-01 (1978) (court upheld bylaw amendment enacted after plaintiff purchased unit restricting occupancy to individuals aged 18 or over).

Ms. DeVaughn and Mr. Patterson rely on *Graham v. Board of Directors of Riveredge Village Condominium Ass'n*, 1994 WL 597009 (Tenn. Ct. App. 1994), to support their argument that the retroactive application of the leasing restriction is arbitrary and capricious. *Graham* does not help Ms. DeVaughn and Mr. Patterson's cause, however, because the resolution at issue in *Graham* regarding the leasing of individual units was not properly promulgated by the Board of Directors and was therefore unenforceable for that reason. The Board's power was limited by the condominium documents to issues regarding the common property. *Id.* at *1-3. In addition, the master deed in *Graham* included a provision that no amendment would discriminate against any unit owner unless the unit owner so affected consented to the amendment. The restriction thus would not have been enforceable without the consent of all the unit owners even if the Board of Directors had had the authority to enact regulations regarding individual units. *Id.* at *4.[4]

> Many community association actions are designed to promote the residential character of the community. Associations may prohibit rentals altogether, prohibit short-term rentals, or provide benefits to resident owners not equally available to non-resident owners. At first glance, actions like these appear redistributive in nature: they benefit the majority of resident owners at the expense of the minority of non-resident owners. On closer examination, however, these restrictions are far less troublesome, and generally should be sustained.

> A number of justifications underlie the common preference for resident owners. Resident owners may prefer other resident owners on the theory that, because residents have a long-term financial stake in the community, they are likely to work harder at maintaining their units and common areas, which will result in higher long-term market value for all units. Indeed, lenders

---

[4]The *Graham* court stated in *dicta* that the proposed limitations on renting units was unreasonable because the condominiums are located in a tourist area where families often travel to spend short-term holidays. *Graham*, 1994 WL 597009, at *4. The record here contains no evidence that The Preserve is located in a tourist area or that owners of units at The Preserve purchased their units for the purpose of renting them out to tourists.

apparently share this view, because they often condition financing of associations on the maintenance of a high percentage of resident owners. Beyond market value, resident owners may value the sense of community that comes with a stable neighborhood and may fear that renters -- especially short-term renters -- will interfere with that sense of community.

Stewart E. Sterk, *Minority Protection in Residential Private Governments*, 77 B.U. L.Rev. 273, 322-23 (1997); *see Shorewood West Condominium Ass'n v. Sadri*, 992 P.2d 1008, 1010 (Wash. 2000) (condominium owners adopted leasing restrictions because they feared their units might lose value if some units were occupied by non-owners).

Ms. DeVaughn contends the reason she is leasing her townhome is to be able to pay her mortgage and that a foreclosure is more undesirable to fellow townhome owners than a renter. Ms. DeVaughn may be right. However, that decision is not for the court to make, but is for the other unit owners to determine in accordance with the statutory scheme and the documents governing The Preserve.

We conclude the prohibition against renting units at The Preserve is not arbitrary or capricious as applied to Ms. DeVaughn. When she purchased her townhome in 2004 the Declaration clearly provided that it could be amended by a vote of 67% and that Ms. DeVaughn would be bound thereby. Despite Ms. DeVaughn and Mr. Patterson's suggestion to the contrary, The Preserve's Declaration amendment prohibiting the rental of individual units is consistent with the Horizontal Property Act and with the governing documents of The Preserve; it is therefore not against public policy. *See Thomasson*, 878 S.W.2d at 566 (public policy of Tennessee with respect to condominiums is set forth in the Horizontal Property Act).

## CONCLUSION

We affirm the trial court's judgment in all respects. Costs of this appeal are assessed against the appellants, Marsha DeVaughn and Keene Patterson, for which execution shall issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE