FILED
05/10/2017
Clerk of the
Appellate Courts



IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 4, 2017 Session[1]

## FRANKLIN SQUARE TOWNE HOMEOWNERS ASSOCIATION INC., ET AL. v. JOSEPH B. KYLES, ET AL.



**Appeal from the Chancery Court for Shelby County**
**No. CH-11-0838     Walter L. Evans, Judge**

_____

**No. W2016-02018-COA-R3-CV**

_____

This case involves a dispute over property. The trial court ruled that the defendants' driveway and air conditioner pads encroached onto the plaintiffs' property but declined to order their removal. Rather, the trial court awarded the plaintiffs damages and ruled that the encroachments could remain in place. Both parties appealed. We affirm the trial court's conclusion that plaintiffs' action with regard to the driveway is not barred by the Tennessee Code Annotated section 28-2-103 statute of limitations. We reverse the trial court's ruling, however, to note that any action regarding the air conditioners and their placement is barred by the section 28-2-103 statute of limitations. We also reverse the trial court's ruling allowing the driveway to remain in place.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Reversed in Part**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which BRANDON O. GIBSON, J. and JEFFREY PARHAM, SP. J., joined.

Michael C. Patton and Kavita G. Shelat, Memphis, Tennessee, for the appellants, Franklin Square Towne Homeowners Association, Inc., C. V. Scarborough, Jr., Natasha N. Adams, Andy Steve Gilliam, and Janice A. Gilliam.

Edward M. Bearman and Gary E. Veazey, Memphis, Tennessee, for the appellees, Joseph B. Kyles, and Ava A. Kyles.

**OPINION**

_____
[1] Oral Argument in this case was heard at the University of Tennessee at Martin.

## Background

This case involves the proper remedy for an encroaching driveway. On or about June 24, 2010, Defendants/Appellees Joseph B. Kyles and Ava B. Kyles ("Appellees") began construction on a driveway to their residence on the eastern side. Appellees' property abuts the property of the Franklin Square Towne Homeowners Association, Inc. ("the Association"), which is the homeowner's association of the townhomes neighboring Appellees' home. Owners of the neighboring townhomes, who were members of the Association (collectively, "Property Owners"), observed the construction and therefore reviewed documents to determine whether the construction was properly on Appellees' property. After reviewing the documents, Property Owners informed Mr. Kyle on more than one occasion of their belief that the driveway was being constructed on the Association's property. Mr. Kyle, however, rebuffed the Property Owners' concerns and continued with the construction of the driveway. During this time, letters were delivered to both Appellees and their attorneys concerning the encroachment. Work on the driveway continued after the delivery of the letters, however. The driveway was completed on June 30 or July 1, 2010.

On May 17, 2011, the Association and Property Owners C.V. Scarborough, Natasha N. Adams, Steve Gilliam , and Janice A. Gilliam (together with the Association, "Appellants") filed suit against Appellees, seeking an injunction, the removal of the offending driveway, compensatory damages, and punitive damages. Appellees answered the complaint and raised the affirmative defense of adverse possession. Appellees also filed a counter-claim for adverse possession. The parties participated in mediation, which was unsuccessful.

The trial court held a bench trial on December 7, 2015, and February 2, 2016. At trial for the first time, Appellees conceded that a portion of their driveway and air conditioning pads encroached onto the Association's property. Accordingly, we will only discuss the testimony that is relevant to this appeal.

Property Owner Natasha Adams testified that she was the first among the Property Owners to notice the construction of the driveway. After learning of the construction, she and other Property Owners, Thomas Taylor[2] and Steve Gilliam reviewed the plat for their townhomes and determined that the driveway was encroaching onto the Association's property. According to Ms. Adams, the Property Owners confronted Mr. Kyle with the plat and notified him that the driveway was encroaching onto the Association's property. Ms. Adams testified that Mr. Kyle responded that his documents indicated that he owned the disputed area. Although Property Owners requested that Mr. Kyle stop construction, construction continued unabated. As a result of the construction, Ms. Adams testified that the construction crew excavated the area for a driveway pad, as well as cut down and removed two mature crepe myrtles, two juniper bushes, three azalea bushes, and one

---

[2] Mr. Taylor was deceased at the time of trial.

dogwood tree. Ms. Adams testified that she believed the value of her townhome had decreased by approximately $10,000.00 to $12,000.00 due to the changes to the property. Ms. Adams noted that other units had also been affected. Ms. Adams explained that she reached the above figure by taking into account that loss of greenery and foliage and the loss of seclusion.

Other witnesses on behalf of Appellants likewise testified that they repeatedly approached Mr. Kyle to inform him that the driveway was being constructed on the Association's property. According to these witnesses, however, Mr. Kyle refused to suspend construction and requested that the parties' attorneys handle the matter. Mr. Gilliam further testified that his property was impacted by the encroachment in that allowing the driveway to remain on his property "creates a serious issue" in the event that he wishes to sell his property or to make improvements that might impact the utility lines to Appellants' properties that are under the driveway. Mr. Gilliam further testified that the removal of the greenery resulted in a loss of privacy for Appellants, which could lead to security issues.

The surveyor who performed a survey in 2010, Larry Astin, testified regarding his findings. According to the survey, a portion of the driveway, as well as the air conditioner pads for Appellees' home, encroached onto the Association's property.[3] At the conclusion of Mr. Astin's testimony, Appellees conceded that the driveway was constructed partially on the Association's property.

Adam Cartwright, the co-owner of a landscaping and concrete business testified that Appellants had asked him to prepare an estimate of the cost to remove the driveway and replace the greenery in the disputed area. According to Mr. Cartwright, the estimate included costs to excavate the driveway, for traffic control, to "haul off the concrete," to fill the area with soil, to brick out some areas as necessary, to replace the curb, to sod, and to replace juniper bushes, crepe myrtles, azaleas, and a dogwood. According to Mr. Cartwright, the estimated total cost of the project was $10,600.00. On cross-examination, Mr. Cartwright admitted that his estimate would be lower if he used smaller shrubs. Mr. Cartwright explained, however, that the shrubs had been removed by the time he performed his estimate, so he determined the proper size "best [he could] tell" based on the size and maturity of other plants in the neighborhood. Finally, Mr. Cartwright explained that, in order to do the work for which he provided the estimate, his workers "would need to be all over that driveway." Indeed, Mr. Cartwright indicated that his estimate involved removal of the entire driveway, rather than merely the encroaching area, as the cost could "even go up potentially, having to cut the concrete. [In order to] [r]emove only a portion without damaging the other portion, [it] might have to be taken out by hand as opposed to with machinery, so that could make things much more

---

[3] Throughout their brief, but particularly with regard to Mr. Astin's testimony, Appellants rely on the trial exhibits. The trial exhibits, however, are not included in the record on appeal.

complicated." Mr. Cartwright noted, however, that he had not done the calculations for removing only a portion of the driveway.

At the close of Appellants' proof, Appellees moved for dismissal on the basis of the expiration of the statute of limitations under Tennessee Code Annotated section 28-2-103. The trial court orally denied the motion. Mr. Kyle was the only witness to testify on behalf of Appellees. Mr. Kyle conceded the accuracy of the survey but contended that he had a good faith belief that he owned the property due to years of use of the property, the location of his air conditioners at the time of his purchase of the property, and statements from his realtor when he purchased the property in 2001. Mr. Kyle noted that the air conditioners and their pads had been in the same place at the time of his purchase of the property. According to Mr. Kyle, he and he alone had mowed and maintained the greenery in the disputed area, at considerable expense. Mr. Kyle noted that he did not reside in the home full-time until approximately six years after its purchase. Mr. Kyle maintained, however, that his lawn service performed the only maintenance on that portion of the property during this time.

Mr. Kyle admitted that Property Owners had approached him multiple times during the construction of the driveway with their concerns about the fact that the driveway encroached on the Association's property. According to Mr. Kyle, however, he never suspended construction because he believed that the disputed area belonged to him. Mr. Kyle also admitted that he first suggested that lawyers become involved in the dispute. According to Mr. Kyle, this statement came after the discussion became heated and because issues had previously arisen between his family and one Property Owner over an unrelated matter.

Mr. Kyle explained that the purpose of the driveway was to provide security and convenience for his family. Mr. Kyle's wife suffers from Sickle Cell Anemia and uses a cane for support. According to Mr. Kyle, the new driveway was much closer to the front door of the home, allowing his wife much easier access. Mr. Kyle admitted, however, that another driveway was on the property that allowed access to his home.

In rebuttal, Appellees called Reverend C.V. Scarborough, a Property Owner. Reverend Scarborough testified that he purchased his townhome in 1987. At the time, only one air conditioner was attached to the property later purchased by Appellees; Reverend Scarborough, however, could not state when the second air conditioner was added. According to Reverend Scarborough, both he and Mr. Gilliam mowed and maintained the disputed areas over the years. Reverend Scarborough indicated that this maintenance continued "in the last few years," i.e., after Appellees' purchase of the neighboring property. Reverend Scarborough testified that he took care of the trees and bushes "as much as they were taken care of," tended to the juniper bushes, and mowed back around Appellees' air conditioners.

- 4 -

On August 29, 2016, the trial court entered an order containing findings of fact and conclusions of law. The trial court first confirmed that a portion of the disputed driveway was constructed on the Association's property, conforming to the survey introduced at trial. The trial court also rejected Appellees' argument regarding the expiration of the Tennessee Code Annotated section 28-2-103 statute of limitations as "unpersuasive." The trial court therefore ruled that Appellees' encroachment onto the Association's property by way of both the driveway and concrete pads on which air conditioning compressors sit constitute an intentional trespass.

The trial court ruled that to allow Appellants to remove the driveway would entail a "substantial" cost and "w[ould] diminish the value of both parcels of land to the extent that the driveway encroachment shall remain." The trial court found, however, that the encroaching driveway did not diminish the use of Appellants' properties. The trial court therefore ruled that Appellees would pay $10,000.00 "for the encroachment," while receiving a perpetual easement for the encroachment to remain. Additionally, the trial court awarded Appellants $5,000.00 in punitive damages for Appellees' intentional conduct. Both parties filed notices of appeal.

## Issues Presented

Here, each party raises a single issue on appeal. Appellees argue that the trial court should have dismissed this action based upon the expiration of the Tennessee Code Annotated section 28-2-103 statute of limitations. In contrast, Appellants argue that the trial court erred in granting Appellees a perpetual easement to allow the encroaching driveway to remain on the Association's property.

## Standard of Review

In this appeal from a bench trial, we review the trial court's findings of fact de novo with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). No presumption of correctness, however, attaches to the trial court's conclusions of law and our review is de novo. *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006) (citing *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000)). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *4215 Harding Road Homeowners Ass'n. v. Harris*, 354 S.W.3d 296, 305 (Tenn. Ct. App. 2011); *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000). Where the trial court does not make findings of fact, there is no presumption of correctness, and we "must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999). Additionally, the trial court's findings on credibility, whether express or implicit, are entitled to great deference on appeal. *See Taylor v. McKinnie*, No. W2007-01468-COA-R3-JV, 2008 WL 2971767, at *4 (Tenn. Ct. App. Aug. 5, 2008). Where the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that

assessment absent clear and convincing evidence to the contrary. ***Franklin Cnty. Bd. of Educ. v. Crabtree***, 337 S.W.3d 808, 811 (Tenn. Ct. App. 2010) (citing ***Jones v. Garrett***, 92 S.W.3d 835, 838 (Tenn. 2002)).

## Analysis

## I.

We begin with Appellees' argument that Appellants' claim is barred by the seven-year statute of limitations found at Tennessee Code Annotated section 28-2-103.[4] Section 28-2-103 provides, in pertinent part: "No person or anyone claiming under such person shall have any action, either at law or in equity, for the recovery of any lands, tenements or hereditaments, but within seven (7) years after the right of action accrued." Here, Appellees argue that, after their purchase of the property in 2001, they exclusively used and maintained the disputed area. Because the lawsuit at issue was not filed until 2011, Appellees argue that it is untimely.

The Tennessee Supreme Court discussed the section 28-2-103 statute of limitations in ***Cumulus Broadcasting, Inc. v. Shim***, 226 S.W.3d 366 (Tenn. 2007). According to the supreme court:

> The limitations on actions statutes, described in Tennessee Code Annotated sections 28-2-102 and 103, are defensive only, barring only the remedy. ***Kittel v. Steger***, 121 Tenn. 400, 117 S.W. 500, 503 (Tenn. 1909). These rights may be utilized by the adverse holder only in the defense of a suit and not as a means to bar use by the rightful owner. ***Savely v. Bridges***, 57 Tenn. App. 372, 418 S.W.2d 472, 479 (Tenn. Ct. App. 1967). . . . Section

---

[4] Although not categorized as such by the parties, here, Appellees' motion qualifies as a motion for involuntary dismissal under Rule 41.02(2) of the Tennessee Rules of Civil Procedure. Rule 41.02(2) provides:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court shall reserve ruling until all parties alleging fault against any other party have presented their respective proof-in-chief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence; in the event judgment is rendered at the close of plaintiff's evidence, the court shall make findings of fact if requested in writing within three (3) days after the announcement of the court's decision.

Here, the trial court orally denied the motion and again addressed the argument in its final order following the presentation of all proof. Accordingly, we will consider all of the proof presented in this case in determining this issue, following the standard applicable in Rule 13(d) of the Tennessee Rules of Appellate Procedure.

28-2-103, which does not involve color of title, protects an adverse holder after a period of seven years but only as to that portion of the land in his actual possession. ***Shearer v. Vandergriff***, 661 S.W.2d 680, 682 (Tenn. 1983).

***Cumulus Broad.***, 226 S.W.3d at 376 (footnote omitted). The possessor asserting a defense under section 28-2-103 must therefore hold the property at issue "adversely." ***Shearer***, 661 S.W.2d at 682 (citing ***Peoples v. Hagaman***, 31 Tenn. App. 398, 215 S.W.2d 827 (Tenn. Ct. App. 1948)).

Thus "[i]n order to establish adverse possession under this theory, **or in any statutorily based claim**, the possession must have been exclusive, actual, adverse, continuous, open, and notorious for the requisite period of time." ***Cumulus Broad.***, 226 S.W.3d at 377 (emphasis added) (citing ***Hightower v. Pendergrass***, 662 S.W.2d 932, 935 n. 2 (Tenn.1983)); *see also* ***Tenn. Stonehenge, Inc. v. Poteat***, No. 01-A-01-9002-CH00087, 1990 WL 125536, at \*2 (Tenn. Ct. App. Aug. 31, 1990) ("To establish a defense under Tenn. Code Ann. § 28-2-103 for the recovery of land, defendants' possession must be actual, adverse, continuous, exclusive, open and notorious for the entire period."). Adverse possession is a question of fact. ***Cumulus Broad.***, 226 S.W.3d at 377 (citing ***Wilson v. Price***, 195 S.W.3d 661, 666 (Tenn. Ct. App. 2005)). The individual claiming ownership by adverse possession has the burden of doing so by clear and convincing proof. ***Cumulus Broad.***, 226 S.W.3d at 377 (citing ***O'Brien v. Waggoner***, 20 Tenn. App. 145, 96 S.W.2d 170, 176 (Tenn. Ct. App. 1936)). "The actual owner must either have knowledge of the adverse possession, or the possession must be so open and notorious to imply a knowledge of the adverse possession, or the possession must be so open and notorious to imply a presumption of that fact." ***Cumulus Broad.***, 226 S.W.3d at 377 (citing ***Kirkman v. Brown***, 93 Tenn. 476, 27 S.W.709, 710 (Tenn. 1894)).

Here, Appellants assert that Appellees' evidence regarding possession was insufficient because it did not establish that Appellees had exclusive possession of the disputed area for the statutory period. Appellants point to Mr. Kyle's own statements that he and his family did not live in the home full-time until approximately 2006, as well as Reverend Scarborough's testimony that he and another property owner maintained the lawn and shrubbery in that area for years. Appellees do not dispute that they were required to show exclusive possession of the property but instead argue that the proof preponderates in favor of a finding that Appellees exercised exclusive dominion and control over the disputed property.

The record on appeal contains sharply disputed evidence regarding the maintenance and use of the disputed property in the years prior to the dispute at issue in this appeal. While Mr. Kyle vehemently denied that anyone other than his family or his agents maintained the lawn and shrubbery in the disputed area after his purchase in 2001, Mr. Kyle admitted that he was not present on the property full-time until 2006. In

addition, Reverend Scarborough testified that he and another Property Owner continued to mow the disputed area, including around Appellees' air conditioner, and take care of the shrubbery even after Appellees purchased the property.

Because of the conflicting testimony on this issue, the trial court was necessarily required to resolve this dispute on the basis of credibility. Although the trial court made no express credibility findings, "[t]he trial court's findings with respect to credibility and weight of the evidence may generally be inferred from the manner in which the court resolves conflicts in the testimony and decides the case." *Walker v. G.UB.MK Constructors,* No. E2015-00346-SC-R3-WC, 2016 WL 2343177, at \*4 (Tenn. May 2, 2016) (citing *Rhodes v. Capital City Ins. Co.*, 154 S.W.3d 43, 46 (Tenn. 2004)). "[F]indings that are related to the issue of credibility will not be disturbed by this court, absent other concrete evidence to the contrary which shows that the trial judge erred in his judgment of the veracity of the witnesses." *Worth v. Cumberland Mountain Prop. Owners Ass'n, Inc.*, No. 03A01-9709-CV-00442, 1999 WL 61629, at \*4 (Tenn. Ct. App. Feb. 10, 1999) (quoting *Farmers & Merchants Bank v. Dyersburg Prod. Credit Ass'n*, 728 S.W.2d 10, 18 (Tenn. Ct. App. 1986)). Where the trial court's factual determinations are based upon its assessment of witness credibility, we will only overturn the trial court's rulings if clear and convincing evidence to the contrary is shown. *See Crabtree*, 337 S.W.3d at 811. The Tennessee Supreme Court has described the "clear and convincing" burden as follows:

> "Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992). "In other words, the evidence must be such that the truth of the facts asserted [is] 'highly probable.'" *Goff v. Elmo Greer & Sons Constr. Co.*, 297 S.W.3d 175, 187 (Tenn. 2009) (quoting *Teter v. Republic Parking Sys., Inc.*, 181 S.W.3d 330, 341 (Tenn. 2005)). In general, "the bar for attaining relief is set very high and the burden borne by the [Appellant] is heavy." *Johnson v. Johnson*, 37 S.W.3d 892, 895 n.2 (Tenn. 2001).

*Furlough v. Spherion Atl. Workforce, LLC*, 397 S.W.3d 114, 128 (Tenn. 2013).

Here, the trial court necessarily resolved any disputes regarding credibility in favor of Appellants when it deemed Appellees' arguments regarding the expiration of the statute of limitations "unpersuasive." Appellees point to no clear and convincing evidence in the record sufficient to overturn the trial court's implied credibility finding. *See Owens v. Tenn. Rural Health Improvement Ass'n*, 213 S.W.3d 283, 288 (Tenn. Ct. App. 2006) (refusing to overturn trial court's credibility determinations when Appellants "failed to point to clear and convincing evidence in the record . . . demonstrat[ing] that the trial court erred" on the issue of witness credibility). Given Reverend Scarborough's testimony that he and other property owners mowed and maintained the disputed area in

the years prior to the dispute, we cannot conclude that use of the disputed property during the statutory period was exclusive to Appellees. *See Albright v. Tallent*, No. E2009-01983-COA-R3-CV, 2010 WL 1905028, at \*3 (Tenn. Ct. App. May 12, 2010) (holding that no exclusive possession was proven by clear and convincing proof where both parties testified that they mowed and landscaped the property during the requisite period).

Moreover, because Mr. Kyle only lived at the subject property full-time since approximately 2006, his testimony that no one else maintained the property from 2001 until 2006 is not clear and convincing; rather, it borders on speculation. *Cf. Oliver v. Quinby*, No. W2000-02158-COA-R3-CV, 2001 WL 359241, at \*3 (Tenn. Ct. App. Apr. 6, 2001) ("Pure speculation does not rise to the level of clear and convincing evidence."); *see also State v. Land,* 34 S.W.3d 516, 529 (Tenn. Crim. App. 2000) (noting that where a witness's testimony is not based on personal knowledge, it may constitute mere speculation). Because the statutory period began to run in approximately 2003, even assuming that Mr. Kyle maintained the property exclusively during his tenure as a full-time resident of the property, as he claims, we cannot conclude that Appellees presented clear and convincing proof of exclusive possession of the property upon which the driveway encroaches from 2003 onward. We therefore affirm the trial court's denial of Appellees' motion for involuntary dismissal due to the expiration of the statute of limitations with regard to the encroachment created by the driveway.

We note, however, that the evidence regarding the air conditioning units does support a finding that they have been placed on the Association's property for the requisite seven years. First, we note that Ms. Adams testified that the air conditioning units had been in the present location as early as 2004. In addition, Mr. Astin, the surveyor, testified that at the time of the 2010 survey the air conditioner units were present and appeared to have been "for quite some time." Mr. Kyle also testified that the air conditioners had been in place prior to his purchase of the home in 2001. Although Reverend Scarborough testified that only one unit was initially placed for Appellees' home, he could not testify as to when the second unit was added. Accordingly, while it does appear that Reverend Scarborough and other property owners mowed the area "around" the air conditioners, the actual property upon which the air conditioners are actually placed appears to have been in "actual, adverse, continuous, exclusive, open and notorious" use prior to 2003. *Tenn. Stonehenge,* 1990 WL 125536, at \*2. The trial court therefore erred in not dismissing Appellants' claim regarding the property upon which the air conditioners sat. The trial court's ruling is therefore reversed to the extent that the trial court ruled that the statute of limitations had not expired as to any claim regarding the property upon which the air conditioners sit. Appellants therefore cannot maintain an action to eject Appellees from their use of the Association's property for purposes of the air conditioning units.

## II.

Appellants next assert that the trial court erred in granting Appellees a perpetual easement for the use of the driveway. In support, Appellants note that the trial court neither found nor does the evidence in the record support a finding of an express grant or easement, a prescriptive easement, an easement by estoppel, an easement through eminent domain, or an implied easement. Appellees generally do not argue that that the trial court correctly imposed an easement above to allow them to continue use of the disputed driveway.[5] Instead, Appellees re-characterize the trial court's ruling and argue that the trial court did not abuse its discretion by refusing to grant Appellants an injunction requiring that Appellees remove the encroachment. *See **State ex rel. Condon v. Maloney***, 108 Tenn. 82, 65 S.W. 871, 872 (Tenn. 1901) (applying the abuse of discretion standard to the trial court's decision to grant or deny a permanent injunction); ***Medtronic, Inc. v. NuVasive, Inc.***, No. W2002-01642-COA-R3-CV, 2003 WL 21998480, at *10 (Tenn. Ct .App. Aug. 20, 2003) ("The standard of review respecting injunctive relief is whether the trial court erred in exercising its discretion in the issuance or nonissuance of the injunction.").

Appellants, however, disagree that the trial court's ruling amounts to the grant of a mandatory injunction. Instead, Appellants contend that they "only sought money damages" in compensation for the encroachment, as well as the ability to remove the encroachment themselves. The confusion regarding the relief sought in this case must, in our view, lie with Appellants. Here, Appellants' complaint clearly requested that the trial court issue an injunction "directing [Appellees] to remove the encroaching portion of the subject driveway." Appellants assert that, despite this request, they "did not pursue that relief at trial." During opening arguments at the trial on this cause, however, counsel for Appellants likewise stated that his clients "seek injunctive relief." Regardless, Appellants did present evidence that they had engaged Mr. Cartwright to provide an estimate of the cost required to remove the offending driveway and replace the plants that had been removed. As such, the confusion regarding Appellants' requested relief is understandable.

Regardless of whether the trial court's ruling is characterized as granting an injunction, we conclude that it was not supported by the evidence at trial and therefore constitutes an abuse of discretion. *See **Armbrister v. Armbrister***, 414 S.W.3d 685, 693 (Tenn. 2013) (quoting ***Gonsewski v. Gonsewski***, 350 S.W.3d 99, 105 (Tenn. 2011)) ("An

---

[5] Appellees do argue, as an alternative argument, that the trial court's ruling "falls within the confines of an easement by necessity or a prescriptive easement as well." Appellees cite law only with regard to the easement by necessity. An easement by necessity, also known as an implied easement, however, requires, inter alia, that the easement must be necessary for the enjoyment of the property. *See **Cellco P'ship v. Shelby Cnty.***, 172 S.W.3d 574, 592 (Tenn. Ct. App. 2005). Although strict necessity is not required, no necessity has been shown in this case, as it is undisputed that Appellees' property has another useable driveway. This Court will not tax the length of this Opinion by discussing the other types of easements that the trial court could have been referring to in this case.

abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, **resolves the case on a clearly erroneous assessment of the evidence**, or relies on reasoning that causes an injustice.") (emphasis added). Here, Appellees assert that the trial court followed the precedent set forth in *Morrison v. Jones*, 58 Tenn. App. 333, 430 S.W.2d 668 (Tenn. Ct. App. 1968), in allowing the offending driveway to remain. In *Morrison*, the parties disputed the ownership of a piece of property upon which the defendants had constructed a building. The trial court ruled that the defendant had willfully and intentionally encroached upon the plaintiffs' property. *Id.* at 339. The trial court therefore issued a mandatory injunction directing defendants to remove the encroachment. *Id.*

The Tennessee Court of Appeals affirmed the trial court's ruling that the defendants had encroached on the plaintiffs' property. The Court of Appeals was more concerned, however, with the trial court's decision to issue an injunction requiring the encroachment's removal. As the Court explained:

> The most serious and difficult question which confronts us is that which is raised under the third assignment in which the defendants challenge the basis of the Chancellor's decision to grant a mandatory injunction.
> It is the general rule that the equitable remedy of injunction is not a matter of right, but is exercised only in the sound discretion of the Chancellor. . . .
> It is also the general rule that a mandatory injunction will not be granted except in extreme cases and when courts of law are unable to afford adequate redress, or when the injuries complained of cannot be compensated in damages. . . .

*Id.* at 342 (citations omitted). Based upon these rules, the Court of Appeals ultimately concluded that the issuance of a mandatory injunction was unjust and that monetary damages were more appropriate.

The rule adopted in *Morrison* has only been followed a handful of times by this Court. *See generally Cross v. McCurry*, 859 S.W.2d 349, 354 (Tenn. Ct. App. 1993) (affirming the trial court's denial of an injunction requiring removal of an encroachment); *Smith v. Rodgers*, 677 S.W.2d 1, 4 (Tenn. Ct. App. 1984) (reversing the trial court's grant of an injunction directing defendants to remove an encroachment); *Package Exp. Ctr., Inc. v. Maund*, No. E2000-02059-COA-R3-CV, 2001 WL 579051, at *4 (Tenn. Ct. App. May 30, 2001) (reversing the trial court's grant of an injunction because "[t]he right to an injunction was not asserted within a reasonable time"). Accordingly, it appears that its result is based on the unique facts at issue. The facts in *Morrison*, however, are not analogous to the facts in this case. In the first instance, the plaintiffs in *Morrison* waited until the construction of the building was complete to complain of the encroachment. Indeed, nothing in the opinion indicates that the plaintiffs voiced any concern over the

encroachment until after the construction was completed. Accordingly, the defendants had no opportunity to remedy the issue prior to the completion of their building. Other courts applying the rule from *Morrison* likewise noted that the plaintiffs did not protest the encroachment at the time it was constructed. *See Cross*, 859 S.W.2d 354 (noting that the plaintiff did not voice any protest until six years after the construction); *Smith v*, 677 S.W.2d at 4 (noting that "a considerable length of time elapsed between the encroachment and the filing of this action"). Indeed, this Court characterized the plaintiffs' actions in *Morrison* as having "more or less lulled the encroachers into making substantial improvements." *Tindell v. West*, No. E2011-01744-COA-R3-CV, 2012 WL 1525035, at *5 (Tenn. Ct. App. Apr. 30, 2012) (declining to reverse the trial court's ruling that the encroachment be removed where the plaintiff acted promptly in informing the defendant of the encroachment).

The same delay is simply not present in the case-at-bar. Here, Appellants testified that they immediately informed Mr. Kyle of their belief that the driveway was encroaching onto the Association's property. Mr. Kyle, however, chose not to suspend construction but to carry on despite notice that the driveway was not on his property. Indeed, it was these facts that led to the trial court's decision to characterize Appellees' actions as willful and to award punitive damages.[6] Because Appellants were not aware of Mr. Kyle's intention to construct the driveway before construction began, we cannot discern how Appellants could have notified Appellees of their concerns regarding the encroachment at any earlier time.

Moreover, the decision to reverse the grant of a mandatory injunction in *Morrison* related to the "undue hardship upon the defendants and result in little, if any, benefit to the [plaintiffs]" where "any other adequate means of redress is available." *Morrison*, 430 S.W.2d at 677. Specifically, the Court of Appeals quoted the trial court's finding that there was an "imbalance between the expense to [defendants] and the benefit to [the plaintiffs] of removal." *Id.* Appellees argue that the same was found by the trial court in this case, which ruled that removal of the encroaching driveway would "diminish the value of both parcels of land" and indicated that that the removal would also require a "substantial" cost. Respectfully, we cannot agree that the evidence in the record supports the trial court's conclusion on this issue.

Here, the parties presented minimal evidence regarding the diminution of value to Appellants' properties. Indeed, only Ms. Adams testified as to this issue, stating her belief that her property had been devalued by approximately $10,000.00 to $12,000.00. Ms. Adams based her testimony on the loss of greenery and privacy to Appellants' properties. Ms. Adams noted that her estimate was based only on the decrease in value to her property. No expert proof was presented on this issue. Likewise, no evidence was presented to rebut Ms. Adams's estimation as to the value lost to her property. Although

---

[6] The trial court's finding that Appellees' action was willful and therefore a proper basis for punitive damages has not been appealed.

the trial court found that the encroaching driveway did not diminish Appellants' "use of the property," it did not make an express finding regarding whether the value of the property was reduced by the encroachment.

The cost to remove the encroaching driveway, however, was largely undisputed: Mr. Cartwright testified that the cost to remove the driveway and replant trees, shrubbery, and sod was approximately $10,600.00. Although Appellees suggested that Mr. Cartwright's estimate could be lowered by using smaller shrubbery, there was no genuine dispute as to the accuracy of Mr. Cartwright's estimate. From our review of Mr. Cartwright's estimate, the work appears to involve both removal of the encroaching driveway and replanting of grass and shrubbery to return the disputed area to the status quo that existed prior to the construction of the driveway.[7]

Based on the only figures presented at trial, it does not appear that the cost to remove the encroaching driveway will cause an undue hardship without a corresponding benefit. Here, the trial court awarded Appellants $10,000.00 in damages, the approximate cost to perform the work to return the disputed area to the status quo. This figure is nearly identical to the only evidence in the record concerning the loss of value to Appellants' properties due to the encroachment. As such, the benefit to Appellants, the return of the value of their property, is in no way out of proportion to the expense needed to return the property to the status quo.

Finally, we note that, although Mr. Kyle testified that the encroaching driveway allowed additional security and convenience for his wife, who walks with a cane, there is no evidence in the record that the value of Appellees' property would be substantially diminished by returning the property to its condition prior to Appellees' encroachment. In fact, Appellees presented no proof even as to the cost of installing the driveway.[8] Indeed, common sense dictates that the burden of tearing down an entire building that has already been completed due to a relatively minor encroachment is substantially greater than the burden of removing a driveway. As such, we cannot conclude that the situation presented in this case is analogous to the facts in *Morrison*.[9]

---

[7] It appears that the estimate includes work to both the Association's property and Appellees' property, as Mr. Cartwright testified that the cost would be even greater to only remove that portion of the driveway that encroaches on the Association's property.

[8] Mr. Kyle discussed in his testimony the costs of other maintenance to the property but did not specifically provide a figure for the cost of installing the driveway.

[9] In addition, the Court in *Morrison* also noted that there was a genuine dispute over the proper boundary line. *See Morrison*, 430 S.W.2d at 674; *see also* *Ass'n of Owners of Regency Park Condominiums v. Thomasson*, 878 S.W.2d 560, 564 (Tenn. Ct. App. 1994) ("This court also denied a mandatory injunction in [*Morrison*] because the court found there was a genuine dispute as to the location of a boundary line and damages afforded an adequate remedy."). There is no such dispute in this case, as Appellees conceded at trial that the driveway encroached onto the Association's property.

- 13 -

Here, the trial court based its ruling that the encroachment could remain on its findings that the cost to remove the encroachment would be substantial and that removal would unduly burden both parcels. Based on the foregoing, we conclude that the evidence preponderates against the trial court's finding that removal of the encroaching driveway would undermine the value of both parcels. As such, we cannot agree that this case presented the appropriate situation for allowing the encroachment to remain as was recognized by this Court in *Morrison*. The trial court's decision to allow the encroachment to remain is therefore reversed. Appellants are therefore entitled to remove the encroaching driveway in an expedient and reasonable manner taking into account all parties.

## Conclusion

The judgment of the Shelby County Chancery Court is affirmed in part and reversed in part. Costs of this appeal are taxed one-half to Appellants, Franklin Square Towne Homeowners Association, Inc., C.V. Scarborough, Natasha N. Adams, Steve Gilliam, and Janice A. Gilliam, and their surety, and one-half to Appellees, Joseph B. Kyles and Ava B. Kyles, for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE